**FORM 104 (08/07)**

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Charles L. Smith, Chapter 7 Trustee | **DEFENDANTS**<br>Noon Capital, LLC |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Charles Smith, Telpner Peterson Law Firm, LLP, 25 Main Place, Suite 200, Council Bluffs, IA 51503; (712) 325-9000 | **ATTORNEYS** (If Known)<br>Bradley R. Kruse, Dickinson Bradshaw, 801 Grand Ave., Ste. 3700, Des Moines, IA 50309 |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☒ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
This Court has jurisdiction of this matter pursuant to 28 U.S.C. Sec. 157 and 1334, 11 U.S.C. Sec. 542, 547, 550, 551, and F.R.B.P. 7001. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

**FORM 104 (10/06), Page 2**

| **BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES** | | |
|---|---|---|
| NAME OF DEBTOR Lindsay Sturm and Sean Sturm | | BANKRUPTCY CASE NO. 25-01022-lmj7 |
| DISTRICT IN WHICH CASE IS PENDING Southern District | DIVISIONAL OFFICE | NAME OF JUDGE Lee M. Jackwig |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE September 11, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) Charles L. Smith, Trustee | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>LINDSAY STURM AND SEAN STURM<br>Debtors. | BANKRUPTCY NO. 25-01022-lmj7<br>ADV. PROCEEDING NO. |
| CHARLES SMITH, Trustee<br>Plaintiff,<br>vs.<br><br>NOON CAPITAL, LLC<br>Defendants. | COMPLAINT |

COMES NOW, Charles Smith, Plaintiff/Trustee herein ("Trustee") by and through his counsel, and for this Complaint respectfully states as follows:

COUNT I.

**JURISDICTION, VENUE AND COMMON ALLEGATIONS**

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. Sec. 157 and 1334, 11 U.S.C. Sec. 542, 547, 550, 551, and F.R.B.P. 7001. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). Venue is proper in this adversary proceeding pursuant to 28 U.S.C. § 1409.

2. On June 14, 2025, Lindsay Sturm and Sean Sturm (hereinafter referred to as "Debtors") filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code (the "Petition").

3. The Trustee was appointed Trustee in the Debtor's case on June 16, 2025, and continues to serve in that capacity.

4. Noon Capital, LLC ("Noon Capital") is a Florida limited liability company.

5. Ames MOB, LLC ("Ames MOB") is an Iowa limited liability company.

6. Noon Capital made two initial loans to Lindsay Sturm.

7. The first promissory note was executed by Lindsay Sturm, as borrower, payable to Noon Capital, as lender, in the principal amount of $302,002.90 dated September 2, 2021 ("Note One").

8. The second promissory note was executed by Lindsay Sturm, as borrower, payable to Noon Capital, as lender, in the principal amount of $51,584.40 dated July 31, 2022 ("Note Two").

9. On March 10, 2023, Lindsay Sturm and Noon Capital executed an Amended and Restated Pledge and Security Agreement (the "Amended and Restated Pledge"). (Exhibit A)

10. The Amended and Restated Pledge terminated and replaced the "existing Pledge and Security" in addition to amending and restating Note One and Note Two, along with additional capital into the Amended and Restated Promissory Note.

11. The Amended and Restated Pledge assigned and transferred all of Lindsay Sturm's right, title, and interest in Ames MOB to Noon Capital.

12. However, the Amended and Restated Pledge did not transfer absolute title in Ames MOB from Lindsay Sturm to Noon Capital.

13. The Amended and Restated Pledge was security for Lindsay Sturm's indebtedness to Noon Capital.

14. Under the Amended and Restated Pledge, any and all distributions of Ames MOB to Lindsay Sturm were to be paid directly to Noon Capital until the debt is paid in full.

15. Upon payment of the debt in full, Noon Capital is directed to execute and deliver termination statements to Lindsay Sturm.

16. Additionally, the Amended and Restated Pledge gave Noon Capital the right to exercise all rights in regards to Ames MOB without limitation on conversion, exchange, subscription, or other rights, privileges, or options upon the occurrence of a default "*as if Secured Party (Noon Capital) were the absolute owner thereof.*"

17. On May 19, 2025, Noon Capital filed a UCC Financing Statement to perfect the Amended and Restated Pledge within 90 days of filing the Petition. (Exhibit B)

18. The action of Noon Capital filing a UCC Financing Statement further demonstrates that the Amended and Restated Pledge is a pledge rather than an assignment.

<u>COUNT II.</u>

**PREFERENCE PAYMENT**
**PURSUANT TO 11 U.S.C. SEC. 547**

19. Trustee incorporates paragraphs 1 – 18 of the Complaint as part of this Count.

20. The transfers itemized in paragraph 9 – 17 constitutes a preferential transfer ("Transfer").

21. The Transfer was to or for the benefit of Defendant as a creditor.

22. The Transfer was for or on account of an antecedent debt owed by Lindsay Sturm before the transfer was made.

23. The Transfer occurred while Debtors were insolvent.

24. The aforesaid Transfer occurred within ninety days (90) of the filing of the Petition.

25. The Transfer enabled Defendant to receive more than it would have received if the case were a case under Chapter 7, the Transfer had not been made, and Defendant received payment of such debt to the extent provided by the provisions of Title 11.

26. The Transfer is avoidable by the Trustee pursuant to 11 U.S.C. §§ 547 and 550 and the value thereof should be preserved for the benefit of the estate pursuant to 11 U.S.C. § 551.

27. The aforesaid Transfer constitutes a preference and may be avoided pursuant to the provisions of 11 U.S.C. §§ 547, 550, and 551.

WHEREFORE, Trustee prays that this Court enter an Order avoiding the aforesaid preference, and order Defendant to immediately turn over to the Trustee the above-described property so transferred as described herein, or its reasonable value, and for such costs incurred herein, and, for such other and further relief as the Court deems just and proper.

## COUNT III.

## TURNOVER

28. The Trustee incorporates paragraphs 1 – 18 of Count I as part of this Count.

29. Pursuant to the Trustee's rights under 11 U.S.C. Sec. 542, he alleges that the aforesaid assets constitute property of the estate and should be turned over to the Trustee.

WHEREFORE, the Trustee prays that this Court enter an Order directing Defendant to immediately turn over the above-described property to the Trustee, or for an accounting of such property or its value and damages for the detention of same; and, for such other and further relief as the Court deems just and proper.

/s/ Charles Smith
Charles Smith, Trustee, AT0007415
Emily J. Dean, AT0016069
Telpner Peterson Law Firm
25 Main Place, Suite 200
Council Bluffs, IA 51503
Telephone: (712) 325-9000
Facsimile: (712) 328-1946
Email: csmith@telpnerlaw.com
edean@telpnerlaw.com

DocuSign Envelope ID: 74E0BBC3-AF60-4E20-A52F-6039C5AB3BE4

**AMENDED AND RESTATED PLEDGE AND SECURITY AGREEMENT**

THIS **AMENDED AND RESTATED** PLEDGE AND SECURITY AGREEMENT made and entered into by and between NOON CAPITAL LLC, a Florida limited liability company (hereinafter referred to as "**Secured Party**"), and LINDSEY STURM M.D., an individual resident of Story County, Iowa (hereinafter referred to as "**Debtor**").

WITNESSETH:

WHEREAS, two initial loans ("Initial Notes") were executed as follows:

1. Promissory Note by Lindsey Sturm MD, as Borrower, payable to Noon Capital, LLC, a Florida limited liability company, as Lender, in the principal amount of $302,002.90 dated September 2, 2021; and

2. Promissory Note (capital call) by Lindsey Sturm MD, as Borrower, payable to Noon Capital, LLC, a Florida limited liability company, as Lender, in the principal amount of $51,584.40 dated July 13, 2022.

WHEREAS, these two Initial Notes have been amended and restated along with an additional capital call into the AMENDED AND RESTATED PROMISSORY NOTE of even date herewith.

WHEREAS, the parties have agreed to terminate the existing Pledge and Security and replace it with this instrument.

WHEREAS, to induce Secured Party to make the aforesaid Loan, Debtor has agreed to grant Secured Party a security interest in certain of her assets, now owned or hereafter acquired;

NOW THEREFORE, for and in consideration of the premises, and the mutual promises contained herein, the parties intending to be legally bound, hereby agree as follows:

1. Grant of Security Interest. As security for the Loan and the due and punctual payment and performance of the Note and all renewals, extensions and modifications thereof, or any other obligation of Debtor to Secured Party (hereinafter referred to collectively as the "**Obligations**"), Debtor hereby mortgages, pledges, assigns, transfers, sets over, grants, conveys and delivers to Secured Party security, title to, and a continuing security interest in and to the following described property now owned or hereafter acquired and wherever located: all of Debtor's right, title and interest in and to any and all membership and/or capital interest in **AMES MOB, LLC** (the "**Company**"), together with all certificates, options, rights (including voting rights), dividends, or other distributions issued as an addition to, in substitution or in exchange for, or on account of, any such interest, and all proceeds of the foregoing. (The above-described property of Debtor is hereinafter be referred to collectively as the "**Collateral.**")

(a) Debtor hereby delivers to Secured Party an interest transfer power duly endorsed in blank simultaneously herewith in substantially the form of the attached Exhibit A.

(b) Until the Obligations are paid in full, any and all distributions of money from the Company to Debtor shall be paid directly to the Secured Party (or, if received by Debtor, immediately paid to Secured Party) and applied to the Obligations.

(c) If Debtor shall become entitled to receive or shall receive, in connection with any of the Collateral, any of the following only after written approval of the Secured Party:

EXHIBIT
tabbies
A

DocuSign Envelope ID: 74E0BBC3-AF60-4E20-A52F-6039C5AB3BE4

(i) Certificates including, but without limitation, any certificates representing an interest distribution or issuance in connection with any increase or reduction of capital, reclassification, merger, consolidation, sale of assets, combination of interests, split, spin-off or split-off; or

(ii) Options, warrants or rights, whether as an addition to, or in substitution or in exchange for, any of the Collateral, or otherwise;

in which case the Debtor shall accept the same as the Secured Party's agent, in trust for the Secured Party, and shall deliver them forthwith to the Secured Party in the exact form received with, as applicable, the Debtor's endorsement when necessary or appropriate on interest transfer powers duly executed in blank, to be held by the Secured Party, subject to the terms hereof, as part of the Collateral.

2. Representations, Warranties and Agreements of Debtor. Debtor represents warrants and agrees that:

(a) Debtor is the owner of the Collateral, free and clear of all liens and encumbrances, and from and after the date of this Agreement, Debtor will not pledge, mortgage or create or suffer to exist any security interest, lien or encumbrance in or upon the Collateral in favor of any person except for the security interests, liens and encumbrances in favor of the Secured Party, and will not sell, lease, or transfer the Collateral or any interest therein without the prior written consent of Secured Party.

(b) Debtor shall immediately reimburse Secured Party on demand for all expenses incurred by Secured Party in seeking to collect or to enforce any rights in the Collateral including court costs and attorneys' fees, all of which shall constitute an Obligation hereunder and shall bear interest until paid at the highest rate allowed by applicable law.

(c) The Collateral has been duly and validly issued, is fully paid and non-accessible.

(d) Debtor covenants and warrants and shall at Debtor's own expense defend Secured Party's right, title and security interest in and to the Collateral against claims of any person or entity.

(e) Debtor acknowledges that the Secured Party is an affiliate of a member of AMES MOB, LLC, and hereby waives any related conflict that may exist or come to exist.

3. Events of Default and Default. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

(a) If Debtor fails to pay any amount when due and past any applicable grace period under any of the Obligations or otherwise defaults in the observance of any terms and conditions of the Obligations; or

(b) If Debtor breaches any of the representations, warranties or covenants contained herein or in the Obligations; or

(c) If any subsequent encumbrance of the Collateral occurs without Secured Party's written consent or the Collateral is levied on or seized or attached by legal process; or

DocuSign Envelope ID: 74E0BBC3-AF60-4E20-A52F-6039C5AB3BE4

(d) A breach of any agreement, including but not limited to a lease, with Ames MOB, LLC, or a breach of the terms and conditions of the Ames MOB, LLC, operating agreement; or

(e) Debtor files for bankruptcy under Title 11 of the United States Code or insolvency under the insolvency laws of any state, district, commonwealth or territory of the United States. In the event of a default under this section 3(e) Debtor shall not have any cure rights.

4. Remedies on Default. Upon the occurrence of any Event of Default and such Event of Default is not cured within the applicable cure period, if any, then Secured Party may, without further notice or demand, declare the Obligations to be immediately due and payable, and the Obligations shall thereupon be and become forthwith due and payable with interest accrued thereon, without presentment, demand, protest, or notice of any kind except as provided for herein, all of which are expressly waived. If Debtor fails to pay and discharge the Obligations in full at that time, Secured Party shall have, in addition to all other rights and remedies provided for under the Obligations and this Agreement, the rights and remedies of a secured party under the Uniform Commercial Code of the State of Florida and the following rights and remedies:

(a) Immediately and without further notice, upon the occurrence of an Event of Default, whether or not the Collateral shall have been registered in the name of the Secured Party or its nominees, the Secured Party or its nominees shall have the right to exercise all rights as to the Collateral, including without limitation all conversion, exchange, subscription or other rights, privileges or options pertaining thereto as if Secured Party were the absolute owner thereof.

(b) Upon the occurrence of an Event of Default, Secured Party may, without demand of performance or other demand, advertisement or notice of any kind (except the notice specified below of the time and place of public or private sale) to or upon the Debtor or any other person (all of which are, to the extent permitted by law, hereby expressly waived), forthwith realize upon the Collateral or any part thereof, and may forthwith sell or otherwise dispose of and deliver the Collateral or any part thereof or interest therein, or agree to do so, in one or more parcels at public or private sale or sales at such prices and on such terms (including, but without limitation, a requirement that any purchaser of all or any part of the Collateral purchase the interest constituting the Collateral for investment and without any intention to make distribution thereof) as Secured Party may deem best, for cash or on credit, or for future delivery without assumption of any credit risk, with the right to the Secured Party or any purchaser to purchase upon any such sale the whole or any part of the Collateral free of any right or equity of redemption in the Debtor, which right or equity is hereby expressly waived and released.

(c) The proceeds of any such disposition of the Collateral or other action by Secured Party shall be applied as follows:

(i) First, to the costs and expenses incurred in connection therewith or incidental thereto or to the care or safekeeping of any of the Collateral or in any way relating to the rights of the Secured Party hereunder, including collection costs, reasonable attorneys' fees and legal expenses;

DocuSign Envelope ID: 74E0BBC3-AF60-4E20-A52F-6039C5AB3BE4

(ii) Second, to the satisfaction of the Obligations;

(iii) Third, to the payment of any other amounts required by applicable law; and

(iv) Fourth, to the Debtor to the extent of any surplus proceeds.

(d) Except as may otherwise be expressly required by applicable law, Secured Party need not give more than ten (10) days' notice of the time and place of any public sale or of the time after which a private sale may take place, which notice Debtor hereby deems reasonable.

5. Debtor to Hold in Trust. Upon the occurrence of any default, Debtor will, upon the receipt by it of any revenue, income, profits or other sums in which a security interest is granted hereby, or of any check, draft, note, or other instrument evidencing an obligation to pay any such sum, hold the same in trust for Secured Party, in precisely the form received, and will forthwith, without any notice or demand whatsoever (any such notice, demand or other action in such regard on the part of Secured Party being expressly waived) endorse, transfer and deliver any such sums or instruments, or both, to Secured Party for application to the payment of the Obligations. At any time while the Note is outstanding the Secured Party shall have the right to demand that Ames MOB, LLC tender any distributions or other funds that are payable to the Debtor directly to the Secured Party.

6. Additional Remedies on Default. Upon the occurrence of any default, Secured Party may proceed to protect and enforce its rights by any action at law, suit in equity or other appropriate proceeding, whether for the specific performance of any agreement contained in the Obligations or this Agreement, or for an injunction against a violation of any of the terms thereof, or in aid of the exercise of any power granted thereby or by law. In case of default, Debtor shall pay to Secured Party on demand all costs and expenses of collection of the Obligations and of enforcing its rights under this Agreement, including, without limitation, reasonable attorneys' fees and legal expenses.

7. Sale of the Collateral. If substantially all of the Collateral is sold or otherwise transferred to someone other than the Secured Party while any amount is still owed under the Note, the entire principal and accrued interest shall immediately become due and payable immediately, and if the Collateral is being sold the full amount due and owing shall be paid to the Secured Party at closing.

8. Power of Attorney. Debtor does hereby irrevocably make, constitute and appoint Secured Party or any of its officers or designees his true and lawful attorney-in-fact with full power to do all or any of the following upon the occurrence of any default: to endorse any notes, checks, drafts, money orders or other evidences of payment on Collateral that may come into the possession of Secured Party as payment on account of or in connection with the Collateral; to enforce all rights of Debtor under and pursuant to any agreements with respect to the Collateral, all for the sole benefit of Secured Party; to enter into and perform such agreements as may be necessary in order to carry out the provisions of this Agreement, or to carry out the terms, covenants and conditions of this Agreement which are required to be observed or performed by Debtor; to execute such other and further mortgages, pledges and assignments of the Collateral as Secured Party may reasonably require for the purpose of protecting or maintaining the security interest granted to Secured Party by this Agreement, and to do any and all other things necessary or proper to carry out the intention of this Agreement, and Debtor hereby ratifies and confirms all that Secured Party and such attorney-in-fact or its substitute shall do by virtue of this Power of Attorney. This power being coupled with an interest is irrevocable.

DocuSign Envelope ID: 74E0BBC3-AF60-4E20-A52F-6039C5AB3BE4

9. Financing Statements. Debtor hereby authorizes Secured Party to file financing statements and any amendments thereto or continuations thereof without the signature of Debtor so long as they shall be consistent with the intent of this Agreement. The parties hereby agree that, where permitted by applicable law, a carbon or photographic copy, or other reproduction, of financing statement(s) executed by the Debtor may be filed to perfect the security interests granted herein. Upon payment in full of the Obligations and termination hereof, Secured Party shall execute and deliver to Debtor such termination statements as Debtor shall reasonably request. Debtor shall pay all costs and fees of filing or recording any financing statements in connection with this Agreement as well as any amendments thereto or continuations or terminations thereof.

10. General Provisions. Debtor waives demand, notice, protest, notice of acceptance of this Agreement, notice of loans made, credit extended, collateral received or delivered or other action taken in reliance hereon and all other notices of any description except as specifically set forth in Section 4 hereof. With respect both to the Obligations and the Collateral, Debtor consents to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of Collateral, to the addition or the release of any party or person primarily or secondarily liable, to the acceptance of partial payment thereon and the settlement, compromise or adjustment of any thereof, all in such manner and at such time or times as Secured Party may deem advisable. Secured Party shall have no duty as to the collection or protection of the Collateral or any income thereon, nor as to the preservation of rights against prior parties, nor as to the preservation of any rights pertaining thereto. Secured Party may exercise its rights with respect to the Collateral without resort or regard to other collateral or sources of reimbursement for liability. Secured Party shall not be deemed to have waived any of its rights with respect to the Obligations or the Collateral, unless such waiver be in writing and signed by Secured Party. No delay or omission on the part of Secured Party in exercising any right shall operate as a waiver of such right or any other right. A waiver on any one occasion shall not be construed as a bar to or waiver of any right on any future occasion. All rights and remedies of Secured Party with respect to the Obligations or the Collateral, whether evidenced hereby or by any other instrument or agreement, shall be cumulative and may be exercised separately or concurrently. Debtor will take all action as may be reasonably necessary to more fully carry out the intent of this Agreement.

11. Survival of Representations, Warranties and Agreements. All covenants, agreements, representations and warranties made herein and in any certificates delivered pursuant hereto shall survive the making by Secured Party of the loan under the Note, and shall continue in full force and effect so long as the Obligations are unpaid.

12. Effect of Agreement. This Agreement shall be governed by the Uniform Commercial Code and the other laws of the State of Florida. This Agreement shall inure to the benefit of Secured Party and its successors and assigns, and shall be binding upon Debtor, its successors and assigns.

13. Final Agreement. This written Agreement represents the final and entire agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties.

[signature page to follow]

DocuSign Envelope ID: 74E0BBC3-AF60-4E20-A52F-6039C5AB3BE4

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of 3/10/2023, 2023.

DEBTOR:

DocuSigned by:

By: ______________________

LINDSEY STURM M.D., individually and as
a Member of Ames MOB, LLC

SECURED PARTY:
NOON CAPITAL LLC

DocuSigned by:

By: Todd Phillips

Todd Philips, Vice President

DocuSign Envelope ID: 74E0BBC3-AF60-4E20-A52F-6039C5AB3BE4

**EXHIBIT A**

**INTEREST TRANSFER POWER**

FOR VALUE RECEIVED, the undersigned hereby assigns and transfers unto NOON CAPITAL LLC all of the undersigned's (or the undersigned's affiliates) right, title and interest in and to any and all membership and capital interest Ames MOB, LLC, an Iowa limited liability company (the "**Company**"), and does hereby irrevocably constitute and appoint Todd Phillips as attorney-in-fact to transfer said interest on the books of the Company, with full power of substitution in the premises.

In presence of:

DocuSigned by:

By: ______________________
E0B9B522FB4749E...
LINDSEY STURM M.D., individually and as a
Member of Ames MOB, LLC

______________________
Witness

Date: 3/10/2023, 2023

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**E25025345-7**

**FILED**
**IOWA SECRETARY OF STATE**

**2025-05-19 15:33**

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
Leslie Lynn
423-760-4662

B. E-MAIL CONTACT AT SUBMITTER (optional)
leslie.lynn@noonmanagementllc.com

C. SEND ACKNOWLEDGEMENT TO: (Name and Address)
Noon Management, LLC - Leslie Lynn
715 Market Street, Suite 203
Chattanooga, TN 37402

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**DEBTOR'S** NAME: Provide only one Debtor name - use exact, full name; do not omit, modify, or abbreviate any part of the debtor's name

ORGANIZATION'S NAME:

OR

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- | --- | --- |
| Sturm | Lindsay | | |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 1405 Baltimore Drive | Ames | IA | 50010 | USA |

**SECURED PARTY'S** NAME: NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name

ORGANIZATION'S NAME: Noon Capital, LLC

OR

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- | --- | --- |
| | | | |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 715 Market Street, Suite 203 | Chattanooga | TN | 37402 | USA |

**COLLATERAL:** This financing statement covers the following collateral:

The following described property now owned or hereafter acquired and wherever located: all of Debtor's right, title and interest in and to any and all membership and/or capital interest in AMES MOB, LLC (the "Company"), together with all certificates, options, rights (including voting rights), dividends, or other distributions issued as an addition to, in substitution or in exchange for, or on account of, any such interest, and all proceeds of the foregoing.

Check only if applicable and check only one box: Collateral is: ☐ held in a Trust ☐ being administered by a Decedent's Personal Representative

Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

OPTIONAL FILER REFERENCE DATA

☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

Name and address of a RECORD OWNER of real estate described (if Debtor does not have a record interest):

Description of real estate:

MISCELLANEOUS

EXHIBIT
tabbies
B